**THOMAS v BERRY et**

Ohio Appeals, 2nd Dist, Greene Co

No. 334. Decided Jan 2, 1931

Marshall & Marshall, Sidney, for Thomas.
C. W. Whitmer, for Berry et.

HORNBECK, J.

Briefly we glean certain salient facts from the evidence. Mr. Morgan was an old man. He had some real estate in Xenia which had been looked after largely through his own efforts. He had a grandson, the plaintiff, the natural object of his bounty, toward whom he had some antipathy. The defendant, Frederick D. Berry, was a brother-in-law of Mr. Morgan. Cordelia Berry, wife of Frederick, met Mr. Morgan in 1916 in Xenia, two years after her marriage. Thereafter, many times throughout the years, she and her husband would come to Xenia on occasions of deaths in her husband's family or on short visits for the benefit of Mr. Berry's health; that on the occasion of the death of Mr. Morgan's wife in 1922 or 1923 Mrs. Berry came to Xenia; about six months thereafter, when his daughter died, she came and remained three or four weeks; in July, 1927, she again came. On these occasions she would visit Mr. Morgan and in July, 1927, she stayed with him through the day and at Mrs. Cosby's at night. During this visit arrangements were made, at Mr. Morgan's request, to take him back to Chicago to live with the Berrys. Thereafter she returned from Chicago about the 1st of August preparatory to taking Mr. Morgan to Chicago, and that it was during this visit that the deed in question was made. One disinterested witness testified he advised Mr. Morgan to go to Chicago.

It is the claim of the defendants, the Berrys, and not denied in the testimony, that Mr. Morgan had a debt owing to a Loan Company upon which he was paying an exorbitant rate of interest; that Mrs. Berry advised him to borrow money with which to pay this debt, mortgaging his real estate to do so. This mortgage was executed, the money paid. At the same time the mortgage was executed Mr. Morgan told Mr. Whitmer that he purposed to deed the property described in the petition to Mrs. Berry; that she advised that if he were to do that it should be made to her and Mr. Berry jointly; that thereupon the instrument was drawn by Mr. Whitmer deeding the fee to the Berrys, subject to the life estate of Mr. Morgan and subject to the $350.00 mortgage. Mrs. Berry testifies that she did not know until Mr. Morgan had instructed Mr. Whitmer of his purpose to make the deed that he intended so to do.

It appears that the property in question is worth about $600.00; the mortgage was $350.00, the life estate of Mr. Morgan represented an incumbrance of more than two years' standing. So that the equity of the Berrys was less than $250.00. If Mr. Morgan had chosen to present the Berrys with $200.00 in cash, in view of the kindnesses which they had shown him and which he had reason to anticipate in the future, it would have been a normal and usual reaction from an old man toward those who had befriended him. It was claimed that the Berrys secured the proceeds of the $350.00 mortgage. There is no showing whatever to support this claim. The deed recited $1.00 and other valuable considerations. Sufficient

in the absence of fraud.

The evidence discloses without dispute that the Berrys gave Mr. Morgan a good home for almost two years. True, he paid $6.00 per week for room, board and keep, but a man at his age required, and in so far as the record discloses secured, attention and consideration which was of further value. It is testified that he was kept neat, clean, taken to church and generally given considerate and kindly attention. This, though not claimed, is a good and sufficient consideration. On the claim that the Berrys took him to a hospital the record does not disclose any conduct in this regard which merits censure or discloses that he was sent away until it was manifestly required that it be done.

Touching the mental capacity of Mr. Morgan to transact business there is dispute in the testimony. The man with whom he did business the day the deed was made, and others, state that he was competent in their judgment to carry on his own transactions. One of the strongest circumstances supporting the theory of his competency to conduct business affairs is the fact that the Loan Company was willing to advance him money on his note and mortgage . It is claimed that he was susceptible to the influence of women; that he would do anything for a woman. But there is no showing whatever that such influence was brought to bear upon him. So far as the record before us discloses he acted in a normal manner and with good business judgment and reacted as one in the proper use of his faculties would have done. We can not draw an inference upon an inference which we would be required to do to hold that Mrs. Berry exercised a baneful and fraudulent influence over him.

Mrs. Cosby is probably the most damaging witness against Mrs. Berry, but the letter to Mrs. Berry wherein Mrs. Cosby insists that she come to Xenia and get Mr. Morgan, and other parts thereof, in the face of her express testimony to the contrary, are damaging to the quality and weight of her statements.

Mrs. Berry, who was the active agent in the relations between Mr. Morgan and the Berrys, came on to the trial, was put upon the stand in cross examination and fully gave her testimony. This elicited the statement, among others, that Mr. Morgan was displeased with the conduct of his grandson, the plaintiff, because Mr. Morgan having lived with the grandson at Lockland and leaving the home on a visit returned to find that the plaintiff had sold the furniture. One other witness testified Mr.

Morgan had talked to him about this occurrence. This presented a situation in the case which, undenied, would explain the state of mind of Mr. Morgan in feeling aggrieved toward the plaintiff and in conjunction with his appreciation to Mrs. Berry for what she was to do for him would explain, in part at least, his desire to reward the Berrys and cut the plaintiff off. In the face of this damaging testimony the plaintiff did not, and apparently would not, take the stand to dispute it nor to answer any questions which counsel for the Berrys desired to ask him.

A fair consideration of all the evidence is convincing to all members of this court that the plaintiff has failed to establish his case by the degree of proof which he must carry under the law, and that on the claim of want of consideration and fraudulent influence he has failed.

Finding and judgment will therefore be for the defendants, the Berrys.

KUNKLE, PJ, and ALLREAD, J, concur.